UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOSEPH V. MCCRELESS,

     Petitioner,

                                    Case No.  3:12cv414/RV/CJK

SECRETARY OF FLORIDA
DEPARTMENT OF CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 18).  Petitioner filed a reply.  (Doc. 23).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND RELEVANT PROCEDURAL HISTORY

By amended information filed in Santa Rosa County, Florida, Circuit Court Case No. 07-1257, petitioner was charged with one count of trafficking in methamphetamine (28 grams or more, less than 200 grams) (Count 1), one count of trafficking in pseudoephedrine (28 grams or more, less than 200 grams) (Count 2), and one count of possession of drug paraphernalia (Count 3). (Doc. 18, Ex. G, pp. 33-34).[1]  On May 14, 2008, petitioner entered a counseled no contest plea to Counts 1 and 2. (Ex. A, pp. 239-48).  The State nolle prossed Count 3. (*Id.*, p. 240, 245). The court conducted a plea colloquy and accepted petitioner's plea after finding it was freely and voluntarily made. (*Id.*, pp. 241-46).  By judgment rendered on September 24, 2008, petitioner was adjudicated guilty and sentenced as a habitual felony offender to concurrent terms of life in prison. (*Id.*, pp. 17-21, 291).  On October 1, 2008, the court modified the sentence to concurrent terms of twenty years in prison. (*Id.*, pp. 22-27).  Petitioner did not appeal from the judgment. (*See* Doc. 1, p. 2).

On March 24, 2009, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, presenting eight claims. (Ex. A, pp. 37-62).  The state circuit court struck five of the eight claims (Grounds Two through Five, and Seven) as facially insufficient, with leave to amend the claims (*Id.*, pp. 92-95). Petitioner filed a timely amendment. (*Id.*, pp. 108-27).  On October 6, 2010, the circuit court struck Ground Six, with leave to amend the claim. (*Id.*, pp. 168-70). Petitioner filed a timely amendment. (*Id.*, pp. 181-87).  The circuit court ordered a

---

[1]All references to exhibits are to those provided at Doc. 18, unless otherwise noted.  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

limited evidentiary hearing on Ground Six of the motion. (*Id.*, pp. 221-22). Petitioner sought appointment of counsel, but the court denied his request. (*Id.*, pp. 223-26, 230-31). The evidentiary hearing was held July 29, 2011. (*Id.*, pp. 294-322). The circuit court denied petitioner's Rule 3.850 motion in an order rendered on August 8, 2011. (Ex. B, pp. 1-15). The Florida First District Court of Appeal ("First DCA") per curiam affirmed on May 11, 2012, without a written opinion. *McCreless v. State*, 88 So. 3d 154 (Fla. 1st DCA 2012) (Table) (copy at Ex. E). The mandate issued June 6, 2012. (Ex. F).

On June 21, 2012, petitioner filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a) and (b). (Ex. G). The state circuit court dismissed the motion with prejudice in an order rendered on August 2, 2012. (Ex. H). Petitioner did not appeal from the order. (*See* Doc. 1, p. 4).[2]

Petitioner filed his federal habeas petition in this court on August 24, 2012, raising four grounds for relief. (Doc. 1, p. 7). Respondent filed an answer asserting that petitioner procedurally defaulted Grounds One, Two and Three. (Doc. 18, pp. 7-12). Respondent contends petitioner is not entitled to habeas relief on Ground Four, because the state court's adjudication of the claim was not contrary to, or an unreasonable application of, clearly established federal law. (*Id.*, pp. 12-20).

## APPLICABLE LEGAL STANDARDS

### Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C.

---

[2]References to page numbers of the petition are to those enumerated in the court's electronic docketing system.

§ 2254(b)(1),[3] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not fully exhausted in state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  *Boerckel*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).  Federal courts also

---

[3]Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers*, 150 F.3d at 1326–27 (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).

The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower*, 7 F.3d 206, 210 (11th Cir. 1993). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the

legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in

determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by

AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  *Richter*, 131 S. Ct. at 786.

DISCUSSION

Ground One        "Fla. Stat. § 893.135 is facially unconstitutional due to lack of 'mens rea element' and actual possession."  (Doc. 1, p. 5).

Petitioner alleges the following in support of this claim:

Florida's drug law 893.135 is facially unconstitutional as it lacks a "guilty mind" or actual possession elements [sic] and imposes onerous punishments for what is essentially a strict liability offense—all in

violation of U.S. Const. Amendment Fourteen's [sic] due process guarantee.

(Doc. 1, p. 5).  Petitioner asserts he raised this claim in his Rule 3.800 motion.  (*Id.*).

Respondent asserts this claim is procedurally defaulted because petitioner did not fairly present it to the state courts.  (Doc. 18, pp. 7-8).  Although petitioner raised this issue in his Rule 3.800 motion, the state circuit court dismissed the claim on the independent and adequate state procedural ground that it could have and should have been raised on direct appeal.  Respondent contends petitioner cannot now return to state court to properly exhaust the claim; therefore, the claim is procedurally barred from federal habeas review.  (*Id.*, pp. 7-9).

In reply, petitioner asserts he was not afforded legal representation in the collateral proceeding, which constitutes cause for his procedural default under *Martinez v. Ryan*, 132 S. Ct. 1039 (2011).  (Doc. 23, pp. 2-3).  Petitioner additionally asserts he is innocent of the crimes, because there was no evidence, except statements from a confidential informant, linking him to the methamphetamine and pseudoephedrine seized by law enforcement following execution of a search warrant.  (*Id.*).

Petitioner raised his facial constitutional challenge to Florida Statutes § 893.135 in his Rule 3.800 motion.  (Ex. G, pp. 3-12).  The state circuit court dismissed the claim on the ground that the proper avenue for such a challenge was a direct appeal, not a rule 3.800 motion.  (Ex. H, p. 1 (*citing Delancy v. Tucker*, 88 So. 3d 1036, 1037 (Fla. 1st DCA 2012) (holding that "[a] direct appeal is the proper avenue for a facial constitutional challenge to a criminal statute", and that a defendant could not rely on habeas corpus as a remedy for a claim that could have and should have been raised on direct appeal or in a timely Rule 3.850 motion))).  The court

alternatively denied petitioner's claim on the merits.  (*Id.*, pp. 1-2).  The court advised petitioner he had thirty days from the date of the order to file a notice of appeal.  (*Id.*, p. 2); *see also* Fla. R. App. P. 9.141(b)(2) (providing for appeals from postconviction proceedings under Florida Rules of Criminal Procedure 3.800(a), 3.850 and 3.853).  Petitioner did not appeal.  (*See* Doc. 1, p. 4).  Not only is petitioner's claim procedurally defaulted pursuant to the firmly established and regularly followed state procedural bar imposed by the circuit court, the claim is also procedurally defaulted for the equally apparent reason that petitioner failed to invoke one complete round of Florida's appellate review process by appealing the circuit court's order denying Rule 3.800(a) relief.[5]  Petitioner cannot now return to state court to properly exhaust his claim; therefore petitioner's claim is considered procedurally defaulted on federal habeas review.

*Martinez* offers petitioner no relief from the procedural bar.  In *Martinez*, the Supreme Court addressed whether ineffective assistance of counsel in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding.  The Court, modifying its prior holding in *Coleman v. Thompson*, *supra* – that an attorney's ignorance or inadvertence in a post-conviction proceeding does not qualify as cause to excuse a procedural default – recognized a narrow exception for ineffective assistance of counsel at initial-review collateral proceedings.  The Court decided that ineffective assistance of counsel during the initial-collateral review stage may

---

[5]Respondent's procedural default argument is based on the circuit court's rejection of petitioner's claim on an independent and adequate state procedural ground.  In addition to this specific procedural default argument, respondent generally asserts and declines to waive all available procedural bars.  (Doc. 18, pp. 1, 7).

establish cause for a defendant's procedural default of a claim of ineffective assistance at trial.  *Id.* at 1315.  The Court held "where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 1320.

Here, petitioner's Ground One does not present a claim of ineffective assistance of counsel at trial, which is the only type of claim to which the holding of *Martinez* applies.  *See Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013) ("By its own emphatic terms, the Supreme Court's decision in *Martinez* is limited to claims of ineffective assistance of trial counsel that are otherwise procedurally barred . . . ."). Therefore, petitioner fails to show he is entitled to federal review of Ground One through the equitable exception announced in *Martinez*.

Further, petitioner has not made a colorable showing of actual innocence. Petitioner asserts there was insufficient evidence linking him to the methamphetamine and pseudoephedrine seized by law enforcement after they executed a search warrant. Petitioner alleges, specifically, that the search exceeded the scope of the warrant and that the contraband was discovered on property owned by his father, not him.

Evidence concerning the scope of the search and ownership of the property where the contraband was located is not "new" for purposes of the *Schlup* standard, because all of the relevant evidence concerning the search and seizure was known by,

or was readily available to, petitioner at the time he entered his plea.[6] Further, "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1334 (11th Cir. 2008) (*quoting Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998)); *see also Gonzalez v. Sec'y for Dep't of Corr.*, 366 F.3d 1253, 1274 (11th Cir. 2004) (en banc) ("Actual factual innocence is required; legal innocence is not enough."); *Johnson v. Alabama*, 256 F.3d 1156, 1171 ("This exception is exceedingly narrow in scope, as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence."). Here, petitioner does not base his "actual innocence" claim on newly discovered evidence of his factual innocence; instead, he challenges the legality of the search which resulted in the discovery and seizure of the methamphetamine and pseudoephedrine, and the legal sufficiency of the evidence linking him to the illegal chemicals. Petitioner fails to show he is entitled to review of Ground One through the "actual innocence" gateway.[7] As petitioner has made none of the requisite showings to excuse his procedural default, this court should deny federal habeas relief without addressing the merits of Ground One.

Even if this court resolved the procedural default issue in petitioner's favor by finding that petitioner fairly presented, and the state courts rejected on the merits, petitioner's constitutional challenge to Fla. Stat. § 893.135, petitioner is not entitled

---

[6]At the state postconviction evidentiary hearing, petitioner admitted that at the time he entered his plea, he knew there was a search warrant to search his property, and he told defense counsel that the contraband was seized from his father's property. (*See* Ex. A, pp. 298-304).

[7]Petitioner's testimony during sentencing undermines any suggestion of his factual innocence. Petitioner admitted he produced the methamphetamine seized from the barn. (Ex. B, p. 55). He testified he entered a plea to the charges because he knew what he did was wrong, and he stated he learned his lesson and understood he had to "pay" for his wrong behavior. (*Id.*).

to federal habeas relief because his claim fails on the merits.  *Shelton v. Sec'y, Dep't of Corr.*, 691 F. 3d 1348 (11th Cir. 2012) (reversing district court's determination in *Shelton v. Sec'y, Dep't of Corr.*, 802 F. Supp. 2d 1289 (M.D. Fla. 2011), that Florida's Drug Abuse Prevention and Control Act, as amended, (Fla. Stat. §§ 893.101-893.21) was unconstitutional as violative of due process because it eliminated a required *mens rea* element for Florida's controlled substance offenses), *cert. denied*, 133 S. Ct. 1856 (2013); *see also State v. Adkins*, 96 So. 3d 412 (Fla. 2012) (holding that chapter 893, Florida Statutes, is not facially unconstitutional and does not violate due process because the statutes do not punish essentially innocent conduct; there is no constitutional right to possess controlled substances or to be ignorant of the nature of the property in one's possession, and any concern about punishing innocent conduct is obviated by allowing a defendant to raise the affirmative defense of absence of knowledge).

Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two   "Fla. Stat. § 893.135 is unconstitutional as applied, because of its over breadth and vagueness."  (Doc. 1, p. 5).

Petitioner alleges the following in support of this claim:

893.135 purports to make illegal multiple different crimes that may be committed in inumerable [sic] ways "and/or," other ways, leading to multiplictious [sic] indictments, duplicitious [sic] indictments "Double Jeopardy" problems.  Count I and II charge language is identically worded in both counts.

(Doc. 1, p. 5).  Petitioner asserts he raised this claim in his Rule 3.800 motion.  (*Id.*).

Respondent asserts petitioner procedurally defaulted this claim because he never presented the state courts with an "as applied" challenge to the constitutionality of Florida Statutes § 893.135.  (Doc. 18, pp. 9-11).  Further, although petitioner raised

the double jeopardy issue in his Rule 3.800(a) motion, the state circuit court dismissed the claim as procedurally barred because it could have and should have been raised in a Rule 3.850 motion, and to the extent petitioner's Rule 3.800 motion could be construed as a Rule 3.850 motion, it was untimely, impermissibly successive, and failed to satisfy the oath and content requirements of Rule 3.850(c). (*Id.*).  Respondent contends petitioner cannot now return to state court to properly exhaust either issue; therefore, Ground Two is procedurally barred from federal habeas review.  (*Id.*).

In reply, petitioner relies upon the same "cause and prejudice" and "actual innocence" arguments he asserted in Ground One.  (Doc. 23, pp. 4-5).  Petitioner also states he "stands on his argument as was originally articulated in Ground Two of his Rule 3.800 motion."  (*Id.*, p. 5).

Review of petitioner's Rule 3.800 motion demonstrates that petitioner did not fairly present an "as applied" challenge to the constitutionality of Florida Statutes § 893.135.  (*See* Ex. G).  The issue may no longer be litigated under state procedural rules, because a petition for belated direct appeal would be subject to dismissal as untimely, *see*  Fla. R. App. P. 9.141(5)(A), and a Rule 3.850 motion would be subject to dismissal as untimely and successive, *see* Fla. R. Crim. P. 3.850(b), (h).  Therefore, petitioner's "as applied" challenge to the state statute is considered procedurally defaulted from federal habeas review.

Petitioner also procedurally defaulted his double jeopardy claim.  Petitioner raised the claim in his Rule 3.800 motion.  (Ex. G, pp. 3-12).  The state circuit court dismissed the claim on the ground that it was not cognizable in a Rule 3.800(a) motion and should have been raised in a Rule 3.850 motion.  (Ex. H, p. 2).  The court

further determined that to the extent the Rule 3.800 motion could be construed as filed under Rule 3.850, it was untimely, successive, and failed to comply with the oath and content requirements of Rule 3.850(c). (*Id.*). As discussed in Ground One, the court advised petitioner he had thirty days from the date of the order to file a notice of appeal, but petitioner did not appeal the decision. Not only is petitioner's claim procedurally defaulted pursuant to the firmly established and regularly followed state procedural bar imposed by the circuit court, petitioner's claim is procedurally defaulted for the equally apparent reason that petitioner failed to invoke one complete round of Florida's appellate review process by appealing the circuit court's denial order. Petitioner cannot now return to state court to properly exhaust his double jeopardy claim; therefore petitioner's claim is considered procedurally defaulted on federal habeas review.

For the reasons discussed *supra* in Ground One, petitioner has not demonstrated he qualifies for federal review of his claims through either the "cause and prejudice" or "actual innocence" exception to the procedural bar. Petitioner's procedural default bars federal habeas review of Ground Two.

Ground Three          "Drug quantity findings by court are clearly erroneous, therefore sentence length is unfair." (Doc. 1, p. 6).

Petitioner alleges the following in support of this claim:

> Due process violation: the court's drug quantity finding were [sic] based on the arbitrary amount of Coleman lantern fuel found in a "mixture" without knowing the "actual" amount of methamphetamine, therefore, being no factual amount is [sic] basis for a plea or sentence purposes [sic].

(Doc. 1, p. 6). Petitioner asserts he raised this claim as Ground One of his Rule 3.850 motion. (*Id.*).

Respondent asserts petitioner procedurally defaulted this claim, because he never presented it to the state courts in any of his postconviction proceedings.  (Doc. 18, p. 12).  Respondent asserts petitioner argued in Ground One of his Rule 3.850 motion that defense counsel was ineffective for failing to investigate the weight of the methamphetamine, which is an entirely different claim than the due process claim petitioner now raises in Ground Three.  (*Id.*).  Because petitioner is now barred by state procedural rules from returning to state court to exhaust this claim, the claim is procedurally defaulted for purposes of federal habeas.  (*Id.*).

Review of petitioner's Rule 3.850 motion demonstrates that the only claim petitioner presented in Ground One was a claim of ineffective assistance of counsel for counsel's failure to investigate the sufficiency of the evidence to support the drug quantity element of the trafficking in methamphetamine charge, *i.e.*, 28 grams or more but less than 200 grams.  (*See* Ex. G, pp. 72-73).  In fact, all of the claims asserted in petitioner's Rule 3.850 motion were ineffective assistance of trial counsel claims. Petitioner did not fairly present a due process challenge to his conviction and sentence on the trafficking in methamphetamine charge for the lack of a factual basis for the drug quantity element.  (*See id.*).  Thus, Ground Three is unexhausted. Petitioner's due process claim can no longer be litigated under state procedural rules, because a direct appeal is no longer available, and a Rule 3.850 motion would be subject to dismissal as untimely and successive.  *See* Fla. R. Crim. P. 3.850(b), (c), (h).  Petitioner has made none of the requisite showings to excuse his default. Petitioner's procedural default bars federal habeas review of Ground Three.

Ground Four          "Claim (six) on amended 3.850 motion.  Motion to suppress
                      evidence was pending with the court."  (Doc. 1 at 6).

Petitioner alleges the following in support of this claim:

> Defense counsel was ineffective by failing to challenge the legality of seized evidence used to be [sic] admitted into evidence were [sic] essential element for conviction is possession.  Items seized were not of defendant's or on property which a search warrant was issued (illegal search).  How could I have pled out voluntarily without motion to suppress being ruled on by court.

(Doc. 1, p. 6).  Petitioner also complains defense counsel provided ineffective assistance during the plea process by advising him to enter a plea to the charges without advising him he had two viable defenses to the charges:  (1) the contraband was seized from an adjoining piece of property which was outside the scope of the search warrant, and (2) the State possessed no physical evidence to connect him to the contraband.  (Doc. 23, pp. 5-8).  Petitioner asserts he raised this claim as Ground Six of his amended Rule 3.850 motion.  (Doc. 1, p. 6).

Respondent argues petitioner is not entitled to federal habeas relief, because the state courts correctly identified and reasonably applied the clearly established federal standard in rejecting the claim.  (Doc. 18, pp. 12-20).

A.     Clearly Established Federal Law

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process."  *Lafler v. Cooper*, — U.S. —, 132 S. Ct. 1376, 1384, 182 L. Ed. 2d 398 (2012) (*citing Missouri v. Frye*, — U.S. —, 132 S. Ct. 1399, 1404, — L. Ed. 2d — (2012), *and McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."  *Lafler*, 132 S. Ct. at 1387.  The two-part test articulated in *Strickland v. Washington*,

466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during plea negotiations. *Lafler*, 132 S. Ct. at 1384 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Frye*, 132 S. Ct. at 1404, 1409-10 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying *Strickland*'s two-part test to defendant's challenge to his guilty plea based on ineffective assistance of counsel).

*Strickland*'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S. at 57 (*quoting Strickland*, 466 U.S. at 688). The focus of inquiry under the performance prong of the *Strickland* standard is whether counsel's assistance was "reasonable considering all the circumstances." *Strickland*, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The Supreme Court has expressly warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court . . . . Questions like these cannot be answered with

certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann*, 397 U.S. at 769-70, 90 S. Ct. at 1448.

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56-57 (*quoting McMann*, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the

defendant.  *Id.*  Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

*Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

   B. Federal Review of State Court Decision

  Petitioner raised this claim as Ground Six of his amended Rule 3.850 motion. (Ex. A, pp. 181-87).  The state circuit court cited the *Strickland* standard as the applicable legal standard (Ex. B, pp. 2-4), and denied relief on the merits as follows:

   Defendant alleges that his counsel was ineffective for failing to inform Defendant that a motion to suppress was pending prior to advising Defendant to enter a plea.  Defendant claims that if he had known a motion to suppress was pending, he would not have entered a plea but would have proceeded to trial.  Defendant further alleges that his counsel was ineffective in failing to inform Defendant of a "viable, valid defense" that was available to challenge the offenses charged.  Defendant alleges that if he had known of this defense, he would not have proceeded with his plea but would have gone to trial.  The Court will address each of these allegations in turn.

   ***A.  Pending Motion to Suppress***

   At the evidentiary hearing on the issue of whether counsel informed Defendant of the pending motion to suppress, Defendant testified that he told his counsel the items seized were taken from another person's property, but his counsel explained the word "curtilage" meant that items could be seized from outside Defendant's property, and therefore his counsel could not challenge the search.  Defendant also testified that he did not know his counsel had filed a motion to suppress until this Court informed him of such when permitting Defendant to file an amended motion for postconviction relief.  Defendant testified that if he had known a motion to suppress was pending, he would not have entered his plea.

   Defendant's counsel testified that he, in fact, had discussions with Defendant regarding the term "curtilage" however, counsel did not define curtilage in the way Defendant understood.  Counsel additionally testified that it is his custom in search warrant cases to pursue "multiple

tracks" to prevent from having to file a motion for continuance to pursue another theory of defense.  Counsel testified that he will typically file a motion to suppress whether or not there might be a valid motion to suppress.[FN 22]  Counsel testified that he recalled discussing this technique with Defendant.  Counsel also testified that he spoke with Defendant about the pending motion to suppress and the pros and cons of whether to proceed with the motion verses [sic] entering a plea. Counsel further indicated that it was his opinion that the motion to suppress would not have been successful.

> [FN 22:   See Attachment 6, Transcript, Evidentiary Hearing, July 29, 2011, p. 14.  The motion to suppress filed with the Court appears to be a "shell" motion to suppress, as also noted by Defendant in his motion. The content of the motion to suppress supports counsel's testimony that he would ordinarily file a motion to suppress before investigating all information.  See Attachment 7, Motion to Suppress.]

The Court finds trial counsel's testimony to be credible; counsel discussed the pending motion to suppress with Defendant before he entered the plea.  Because Defendant has not demonstrated that his counsel failed to advise him regarding the pending motion to suppress, counsel's actions cannot be deemed deficient.[FN 26] Defendant is not entitled to relief as to this claim.

> [FN 26:  Because Defendant has failed to demonstrate his counsel acted deficiently, this Court does not reach the prejudice prong of the Strickland analysis.  Arguendo, if the deficiency prong had been met, Defendant has failed to demonstrate that he would have proceeded with a meritless motion to suppress and to trial instead of entering a plea in the instant case.  The court's reasoning in this regard is further detailed in the "Valid, Viable Defense" section of this Order.

### B.  *"Valid, Viable Defense"*

Defendant further alleges that his counsel was ineffective for failing to inform Defendant of a "valid, viable defense" before Defendant entered his plea.  Specifically, Defendant references his allegation that the contraband was seized from someone else's property; therefore, the contraband was seized outside the scope of the search warrant.  Defendant claims that if he had known of this defense he would not have entered a plea, but proceeded to trial.

Contrary to Defendant's assertions, Defendant's allegation that the contraband seized was found on someone else's property is not a valid, viable defense.  At the evidentiary hearing, Defendant testified that the items seized were found on his father's property and Defendant did not live on said property.  Consequently, according to Defendant's evidentiary hearing testimony, Defendant would be without standing to challenge the search and therefore would not have a valid, viable defense regarding the seizure of the items.  See Minnesota v. Olson, 495 U.S. 91, 95, 110 S. Ct. 1684 (1990) (A search violates a defendant's Fourth Amendment rights only if a defendant demonstrates that he had an actual, subjective expectation of privacy in the property searched).

*Arguendo*, even if Defendant had standing to challenge the search,[FN 28] such a challenge would still not form the basis of a viable defense.  A review of the record shows that Defendant is incorrect in his assertion that the evidence was improperly seized pursuant to the search warrant.  At the evidentiary hearing, Defendant claimed that the search warrant did not include the two barns located on his father's property where the contraband was found.  Pursuant to the search warrant, the property searched was described as follows:

> Beginning in Santa Rosa County Florida at the intersection of Highway 89 and Calvary Church Road, this intersection is denoted by a green county maintained street south, travel east on Calvary Church Road for less than one tenth of a mile until reaching second driveway on the right (south) side of the road.  The mail box is located next to the

driveway and is a black mail box on a blue wooden post
with the numerics 5449 painted on it in red.  The driveway
ends at two barns and a double wide mobile home.  The
residence to be searched is the double wide mobile home
which is white in color with  grey shingled roof.  The
mobile home does not have a front porch and has a wooden
deck on the rear along with an above ground swimming
pool.  Also to be searched are both barns which are wood
framed and have tin roofs.[FN 30]

The record confirms that the items seized pursuant to the search warrant
were found in the barn(s) and mobile home.  At the sentencing hearing,
Detective Blake Weekley, who was present when the search was
executed, confirmed that the methamphetamine lab was found inside the
barns.  Detective Weekley also testified that Defendant himself was
found inside a hidden compartment in the mobile home.  The arrest
report also confirms that the seized items were recovered from the
residence (a.k.a. mobile home) and the barns.[FN 33] Consequently, the
seizure of items did not occur outside the scope of the search warrant,
and Defendant did not have a "valid, viable defense" based upon the
scope of the search.  Defendant has failed to demonstrate that his
counsel was ineffective in failing to inform him of a defense that was in
fact, an invalid defense.   Additionally, Defendant has failed to
demonstrate he would have proceeded to trial so that he could raise a
defense that was not viable.  Defendant is not entitled to relief as to this
claim.

> [FN 28:   At Defendant's sentencing hearing, it was
> insinuated that Defendant was legally permitted to live on
> Defendant's father's property.   See Attachment 4,
> Transcript, Sentencing Hearing, September 24, 2008, p. 23.
> See also Attachment 8, Pretrial Release Application,
> September 1, 2007 (indicating Defendant resides with his
> father).  If said insinuation is true, Defendant would have
> standing to challenge the validity of the search warrant.]

[FN 30:   <u>See</u> Attachment 9, Search Warrant, pp. 1-2 (emphasis added).]

[FN 33:   <u>See</u> Attachment 10, Arrest Report, p. 2. Ordinarily, the Court would not consider an arrest report as part of the record to base its decision upon.  However, at the sentencing hearing, Defendant conceded that the information contained in the arrest report and PSI was not in dispute.  <u>See</u> Attachment 4, Transcript, Sentencing Hearing, September 24, 2008, pp. 12-13.  Consequently, the Court finds that under these circumstances the arrest report is appropriately considered by the Court.]

(Ex. B, pp. 10-13) (footnotes that merely cited attached transcripts omitted).

The undersigned has carefully reviewed the state court's factual findings in light of the state court record, and concludes they are reasonable.  One significant factual finding is the court's determination that trial counsel Mr. Polk's testimony at the evidentiary hearing was credible.  This court must defer to the state court's credibility determination.  The Eleventh Circuit has emphasized:

Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.  Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983).  We consider questions about the credibility and demeanor of a witness to be questions of fact.  *See Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc).  And the AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

*Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011); *see also Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that

while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (*citing Rice v. Collins*, 546 U.S. 333, 341-42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")).

At the postconviction evidentiary hearing, defense counsel Attorney Eugene Polk testified that in the initial stages of a case, he typically pursues multiple potential defenses, including filing a motion to suppress in cases involving a search warrant or seizure of contraband, to avoid undue delay of the progression of the case by pursuing only one line of defense and then seeking continuances to pursue other defenses when the initial defense becomes unviable. (Ex. A, pp. 306-07). Attorney Polk testified he employed this strategy in petitioner's case, and filed a motion to suppress. (*Id.*, p. 307). In the motion to suppress, Polk asserted the officers exceeded the scope of the search warrant by leaving petitioner's property and searching adjacent property that belonged to petitioner's father. (Ex. B, pp. 127-29). Polk testified, and petitioner did not dispute, that he discussed the suppression issue with petitioner. (Ex. A, pp. 298-301, 303-10). Polk testified that after examining the suppression issue, he concluded there was no viable basis for suppressing the contraband. (*Id.*, p. 307, 311-12).

After determining the facts, the state courts applied *Strickland* to conclude, reasonably, that defense counsel did not perform deficiently during the plea process by failing to advise petitioner of viable defenses. Defense counsel made a strategic decision to file the motion to suppress, discussed the suppression issue with petitioner prior to entry of the plea, and, upon further investigation, reasonably concluded there was no viable basis to pursue the suppression motion. *See Strickland*, 466 U.S. at

690, 104 S. Ct. at 2066 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. . . ."). The search warrant described the property to be searched as 5449 Calvary Church Road, including a white double-wide mobile home, two wood-framed barns with tin roofs, the curtilage of the property, and any outbuildings or campers located on the curtilage of the property. (Ex. B, pp. 138-44). The facts included in the arrest report, which were incorporated into the presentence investigation report and undisputed by the defense at sentencing (*see* Ex. B, p. 43), stated that the methamphetamine and pseudoephedrine were found in the barns on the property. (*Id.*, pp. 134-36). Additionally, the State had evidence linking petitioner to the methamphetamine and pseudoephedrine discovered during the search. This evidence was laid out in Detective Weekley's affidavit in support of the search warrant (which the state court attached to its order denying petitioner's Rule 3.850 motion) and Weekley's testimony at the sentencing hearing. (*Id.*, pp. 42, 58-61, 77-95). Further, according to the prosecutor's statements to the court at sentencing, the State's experts tested the chemicals seized from the property and determined that 28-200 grams of methamphetamine and 28-200 grams of pseudoephedrine were present. (*Id.*, p. 51).

The state courts did not err at all, much less "so transparently that no fairminded jurist could agree with that court's decision." *Bobby v. Dixon*, — U.S. —, 132 S. Ct. 26, 27, 181 L. Ed. 2d (2011). The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Four.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Joseph Virgil McCreless*, Santa Rosa County, Florida, Circuit Court Case Number 07-1257, be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 16th day of December, 2014.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**



NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).